IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TONI VANZANT                          §
                                      §
        Plaintiff,                    §
                                      §
                                      §
v.                                    §          CIVIL NO. H-08-134
                                      §
MICHAEL J. ASTRUE,                    §
Commissioner of the                   §
Social Security Administration,       §
                                      §
        Defendant.                    §

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's motion for summary judgment (Docket Entry No. 19) and Defendant's motion for summary judgment (Docket Entry No. 20).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for disability insurance benefits under Title XVI of the Social Security Act ("the Act").[2]

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. 636(c).  Docket Entry Nos. 14, 15, and 16.

[2]     Transcript of Administrative Proceedings ("Tr.") 42.

A.   **Factual History**

Plaintiff was born on September 14, 1985, and is now twenty-three years of age.[3]   She has a special education high school diploma and no past work experience.[4]   She claims that she became disabled on September 14, 1985, due to a learning disability.[5]

In January 1995, Plaintiff was struggling academically and underwent an intellectual assessment at the Aldine Independent School District ("Aldine ISD") at the request of a parent.[6] Plaintiff's test scores were determined to be in the borderline range of intellectual ability with an intelligence quotient ("IQ") of 71.[7]   This was not low enough to qualify her for special education services.[8]

In October 1996, Plaintiff was tested by Aldine ISD and was again found to be functioning in the borderline range of

---

[3]     Id.

[4]     Tr. 32.

[5]     Id.

[6]     Tr. 274-90.

[7]     Tr. 287.

[8]     Tr. 275-76, 282.   More specifically, on the Kaufman Assessment Battery for Children, Plaintiff scored an 81 on sequential processing, 68 on simultaneous processing, 71 on mental processing and 67 on non-verbal. Tr. 281. She placed in the fifth percentile on the broad written language portion of the Woodcock-Johnson Test of Achievement.   Tr. 283.   On the Weschler Individual Achievement Test, Plaintiff's scores ranged from a high of the forty-second percentile in spelling to a low of the first percentile for mathematics.   Tr. 284.

2

intellectual ability with a full-scale IQ of 77.[9]  However, because it was determined that she had a significant deficit in the area of reading and written language, she was diagnosed as learning disabled.[10]   This diagnosis entitled her to receive special education services.[11]

Plaintiff attended resource classes in math, reading and writing and received special education services in the form of content mastery accommodations in regular classroom settings in other subjects throughout middle school.[12]

In high school, Plaintiff received accommodations of extended time for tests, content mastery for certain classes and reading assistance.[13]  She attended regular classes for seventy-five percent of the day and resource classes for twenty-five percent of the school day.[14]  Plaintiff graduated from high school in 2005, at the

---

[9]    Tr. 258-273.   On the Weschler Individual Achievement Test, Plaintiff's scores ranged from a high of seventh percentile (mathematics reasoning) to a low of first percentile (written expression).  Tr. 265.

[10]    Tr. 256, 266.

[11]    See November 25, 2996, Admission, Review and Dismissal ("ARD") Committee Meeting Report, Tr. 233-257.  In Texas, the ARD Committee is charged with preparing a student's individualized education program ("IEP").  Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist., 328 F.3d 804, 808 (5th Cir. 2003). The ARD Committee is composed of the disabled child's parent(s), at least one representative of the school district, someone who can provide insight into the instructional implications of the child's clinical evaluation, and, when appropriate, other individuals with special knowledge or expertise related to the child and the child himself.  See 20 U.S.C. § 1414(d)(1)(B); Adam J. ex rel. Robert J., 328 F.3d at 808.

[12]    Tr. 213, 232.

[13]    Tr. 82.

[14]    Id.

age of nineteen, after achieving the minimum credit requirements for graduation applicable to students without disabilities.[15]

In September 2004, while still in high school, Plaintiff was evaluated by Lindsay Rosin, Ph.D, ("Dr. Rosin") a clinical psychologist, for educational deficiencies. Plaintiff scored a Full Scale IQ of 67 (first percentile), Verbal IQ of 72 (third percentile) and Performance IQ of 67 (first percentile) on the Weschler Adult Intelligence Scale - III.[16] Dr. Rosin noted that Plaintiff's test-taking behavior was "characterized by poor task persistence and adequate frustration tolerance."[17] He found that the test results were "likely a small underestimate of her true level of functioning."[18] Her scores on the Wide Range Achievement Test - Revision 3 showed that Plaintiff was functioning academically at or below the fourth grade level on all subjects tested.[19]

Dr. Rosin noted that Plaintiff's thought processes were clear and coherent but her abstraction ability was poor as she could not interpret any proverbs presented to her.[20] Dr. Rosin also found

---

[15]    Tr. 126. Plaintiff was exempt from the Texas Assessment of Knowledge and Skills (TAKS) test because of her learning disability.

[16]    Tr. 292.

[17]    Id.

[18]    Id.

[19]    Tr. 293.

[20]    Tr. 292.

that Plaintiff's insight into her problems was fair and her "judgment appeared poor."[21]   The bases for these remarks were not disclosed in the report.

### B. Administrative Hearing

Plaintiff applied for supplemental security income benefits on August 11, 2004, citing her learning disorder.[22]   Her claim was denied initially and on reconsideration.[23]   Plaintiff timely requested a hearing before an administrative law judge ("ALJ").

On March 7, 2007, Plaintiff did not appear at the hearing before the ALJ.  The ALJ heard testimony from Wallace A. Stanfill, a vocational expert ("VE").  The VE testified that he had reviewed the Mental Residual Functional Capacity ("RFC") Assessment ("Mental RFC") prepared by Robert White, Ph.D, a state agency psychologist, and, based on that mental RFC assessment, Plaintiff would be able to perform one hundred percent of unskilled jobs.[24]

Plaintiff's attorney asked the VE to assume that Plaintiff's abstraction ability was poor, defining poor as having no useful ability to function in that area.[25]   The VE responded that generally, a person with abstracting difficulty would need a highly

---

[21]   Id.

[22]   Tr. 42.

[23]   Tr. 42-53.

[24]   Tr. 335.

[25]   Id.

structured work environment and a job with discrete, concrete steps.[26]   When asked if a person with poor judgment could be employed in the national economy, the VE explained that he could not answer that question because judgment could relate to a number of things, including interacting with the public, coworkers or supervisors, or maintaining appropriate behavior on the job.[27]   If poor judgment were defined as having no useful ability in those areas, the VE explained, such a person would not be able to maintain competitive employment.[28]

The VE also opined that a person who had poor task persistence, defined by Plaintiff's attorney as no useful ability to complete a task in a timely manner, would not be able to be competitively employed because even in the unskilled, highly structured base of jobs, one had to remain on task.[29]   The VE concluded that if Plaintiff had no useful ability to complete a task and no useful ability to use judgment, she could not be employed in the national economy.[30]

### C.  ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial

---

[26]   Tr. 336.

[27]   Tr. 337.

[28]   Id.

[29]   Id.

[30]   Tr.  338.

gainful activity since the alleged onset of her disability and that her learning disorder and borderline intellectual functioning were severe.  The ALJ determined that Plaintiff's medically-determinable impairments did not meet the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings").

Specifically, the ALJ found that Plaintiff's allegations concerning her limitations were not fully credible in light of her school records, which detailed skills that would be expected to transfer to a work environment.[31]  The ALJ also found a "striking disparity" between Plaintiff's performance in the examination performed by Dr. Rosin and her performance in high school, which the ALJ attributed to Plaintiff's effort to exaggerate her symptoms.[32]

Relying on the state agency medical reviewer's opinion concerning Plaintiff's mental RFC, the ALJ found that Plaintiff experienced marked limitations in her ability to understand, remember and carry out detailed instructions.[33]  The ALJ also determined that Plaintiff's impairments would moderately limit her ability to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to interact appropriately with the general public, to

---

[31]  Tr. 34-35.

[32]  Tr. 35.

[33]  Id.

7

travel in unfamiliar places, to use public transportation, to complete a workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of rest periods.[34]   The ALJ found Plaintiff capable of sustained concentration, understanding and remembering short, simple instructions, performing simple, repetitive tasks, accepting input from others and responding to normal changes in a work setting.[35]

Finding that Plaintiff had no past relevant work experience, the ALJ found that given Plaintiff's age, limited educational background and RFC, Plaintiff could perform the requirements of one hundred percent of unskilled jobs which exist in significant numbers in the national economy.[36]   The ALJ concluded by finding that Plaintiff had not been under a disability, as defined by the Act, through the date of his decision.[37]

On August 4, 2007, Plaintiff appealed the ALJ's decision.[38] The Appeals Council rejected her request for review, making the ALJ's decision the final decision of the Commissioner.[39]   Plaintiff

---

[34]   Id.

[35]   Id.

[36]   Tr. 36.

[37]   Tr. 37.

[38]   Tr. 25.

[39]   Tr. 3.

appealed that decision on January 9, 2008.

## II.   Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) substantial evidence in the record supports the decision; and 2) the ALJ applied proper legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

### A.   Substantial Evidence

The widely-accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).   It is "something more than a scintilla but less than a preponderance." Id.   The Commissioner has the responsibility of resolving any conflict in the evidence. Id.   If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.   42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.   Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).   In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide

the issues de novo, or substitute the its judgment for the Commissioner's judgment. Brown, 192 F.3d at 496. In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless. Id.

**B. Legal Standard**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not

> be found to be disabled unless he has a
> "severe impairment;" (3) a claimant whose
> impairment meets or is equivalent to an
> impairment listed in [the Listings] will be
> considered disabled without the need to
> consider vocational factors; (4) a claimant
> who is capable of performing work that he has
> done in the past must be found "not disabled;"
> and (5) if the claimant is unable to perform
> his previous work as a result of his
> impairment, then factors such as his age,
> education, past work experience, and [RFC]
> must be considered to determine whether he can
> do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20

C.F.R. § 416.920. By judicial practice, the claimant bears the

burden of proof on the first four of the above steps, while the

Commissioner bears it on the fifth. Crowley v. Apfel, 197 F.3d

194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498. If the

Commissioner satisfies his step-five burden of proof, the burden

shifts back to the claimant to prove she cannot perform the work

suggested. Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

The analysis stops at any point in the process upon a finding that

the claimant is disabled or not disabled. Greenspan, 38 F.3d at

236.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to

deny disability benefits. She contends that the decision is not

supported by substantial evidence and that the ALJ did not follow

proper legal procedures. Specifically, Plaintiff first argues that

the ALJ failed properly evaluate her limitations in daily

functioning in accordance with 20 C.F.R. § 416.920a.  Plaintiff also contends that the ALJ did not properly consider the limiting effects of all her impairments, even those that are not severe, as required by 20 C.F.R. § 416.945(e).  Finally, Plaintiff contends that the VE's testimony that Plaintiff was capable of performing one-hundred percent of unskilled jobs in the national economy was not credible and was contradicted by Social Security Ruling ("SSR") 85-15.

**A.  The Listings/20 C.F.R. § 416.920a**

Although Plaintiff's argument is less than clear, she appears to argue that she meets Listing 12.05C, Mental Retardation. According to Plaintiff, the ALJ failed to make specific findings required by 20 C.F.R. § 416.920a.  Without such findings, Plaintiff argues, the ALJ's conclusion that her mental impairment did not meet the level of severity required by the Listing cannot be supported by substantial evidence.

In order to be found disabled under Listing 12.05(C), Mental Retardation, Plaintiff has the burden to show (1) a valid, verbal, performance or full scale IQ of 60 through 70, and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function.  Here, the administrative record shows that Plaintiff scored a full scale IQ of 67 and a performance IQ of 67 when tested by Dr. Rosin in 2004 and, thus, Plaintiff arguably meets the first prong of the Listing.

Turning to the second prong of the Listing, 20 C.F.R. § 416.920a mandates a procedure by which the ALJ must consider the severity of a claimant's mental impairment.  The regulation requires the ALJ to determine the degree of limitation present in four broad functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R. § 416.920a(c)(3).  If the degree of limitation is "none" or "mild" in the first three categories and "none" in the fourth, the regulation states that, generally, a claimant's impairment will not be considered severe.  20 C.F.R. § 416.920a(d)(1).  If the impairment is severe, the ALJ must then determine if it meets or is equivalent in severity to a listed mental disorder.  20 C.F.R. § 416.920a(d)(2).

In the present case, the ALJ adopted the findings of two state examiners who concurred that Plaintiff had "mild" limitations in the domains of  daily living activities and maintaining social functioning and a "moderate" limitation in the domain of maintaining concentration, persistence or pace.[40]  Consistent with the regulation, the ALJ determined that these impairments were "severe."[41]  See 20 C.F.R. § 416.920a(d)(1) and (2).  However, these determinations of "mild" and "moderate" limitations did not meet the Listing's severity requirement that the limitations be "marked"

---

[40]     Tr. 304.  The document was prepared by Robert White, Ph.D., and reviewed by C. Lankford, Ph.D. Tr. 294.

[41]     Tr. 36.

13

or "extreme" in order to be considered "an additional and significant work-related limitation of function" required by Listing 12.05.[42]

Plaintiff contends that by determining Plaintiff's limitations as "mild" in two domains, the state examiners conceded that Plaintiff had some limitations in those domains. Plaintiff further contends that those findings, in conjunction with the finding of "moderate" limitation on the third domain, required the ALJ to make a specific finding as to the extent of the limitations, presumably in the form of a written discussion in his opinion.

Plaintiff's argument misses the mark as the regulation only requires the ALJ to rate the degree of limitation on the first three domains on a five-point scale, which he did. See 20 C.F.R. § 416.920a(c)(4). The court has reviewed the ALJ's decision and concludes that the ALJ followed the procedure set out in 20 C.F.R. § 416.920a in evaluating Plaintiff's claim of mental impairment. The ALJ's determination that Plaintiff's impairment was not of Listing-level severity is supported by substantial evidence.

**2. Plaintiff's RFC**

At step five, the regulations require that the ALJ determine Plaintiff's RFC, defined as "the most [she] can do despite [her] impairments." 20 C.F.R. 416.945(a). Here, Plaintiff contends that the ALJ failed to acknowledge other, significant limitations

---

[42]    Id.; see also 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.05(C).

affecting Plaintiff's RFC.

In determining Plaintiff's RFC, the ALJ relied on the Mental RFC Assessment form prepared by state examiners that covered twenty categories of mental activity.[43] Plaintiff was found to be not significantly limited in thirteen of twenty categories.[44] Plaintiff was found to be moderately limited in five areas: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to sustain an ordinary routine without special supervision; (3) the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of rest periods; (4) the ability to interact appropriately with the general public; and (5) the ability to travel in unfamiliar places or use public transportation.  Plaintiff was found to be markedly limited in two areas: (1) the ability to understand and remember detailed instructions; and (2) the ability to carry out detailed

---

[43]     Tr. 308.

[44]     Those thirteen categories were: (1) the ability to remember locations and work-like procedures; (2) the ability to understand and remember very short and simple instructions; (3) the ability to carry out very short and simple instructions; (4) the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (5) the ability to work in coordination with or proximity to others without being distracted by them; (6) the ability to make simple work-related decisions; (7) the ability to ask simple questions or request assistance; (8) the ability to accept instructions and respond appropriately to criticism from supervisors; (9) the ability to get along with coworkers or peers without distracting them; (10) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (11) the ability to respond appropriately to changes in the work setting; (12) the ability to be aware of normal hazards and take appropriate precautions; and (13) the ability to set realistic goals or make plans independently of others.  Tr. 308-09.

instructions.

In addition to the above limitations, Plaintiff argues that the ALJ should have included additional limitations based on Dr. Rosin's report.  There, Dr. Rosin described Plaintiff's judgment as poor, without explanation, and also found that Plaintiff had poor abstraction ability based on her inability to interpret any proverbs.  Dr. Rosin's report also recounted that Plaintiff did not know the current month or date, could only identify two seasons of the year, could recite the alphabet up to "Q" only, could not spell "world" backwards or forward and could not perform tasks of serial three's or seven's.[45]  Dr. Rosin noted that Plaintiff did not make eye contact and had no spontaneous conversation.[46]  He concluded that Plaintiff was operating academically at or below a fourth grade equivalent.[47]

As discussed in his decision, the ALJ found ample evidence in Plaintiff's school records to undermine the credibility of Plaintiff's abysmal performance and Dr. Rosin's conclusions.  In an ARD meeting on February 19, 2004, Plaintiff was noted to interact appropriately with peers and adults, adjust easily to new situations, respect authority, cooperate, and complete tasks.[48]  In

---

[45]    Tr. 292.

[46]    Tr. 291.

[47]    Tr. 293.

[48]    Tr. 112.

the same report, she was also was found to keep her work area neat, to have good social skills, to follow directions, to be reliable and to have good attendance.[49]   Importantly, school observers believed that Plaintiff would be able to transfer her skills to post-high school training programs.[50] It was noted that "Toni is able to successfully access the general education curriculum."[51] Plaintiff graduated from high school in May 2005.

Notably, the above-described performance of Plaintiff in a school setting by persons who observed her on a daily basis was completely at odds with her claim that she could not recite the letters of the alphabet after "Q" and only could identify two seasons of the year.  The disparities were discussed at length by the ALJ in his opinion and the credibility issue resolved against Plaintiff.  It is worth noting that Dr. Rosin's evaluation was performed within a month of Plaintiff's request for supplemental security income and was used to support her request for benefits.[52] It was well within the ALJ's realm to determine that Plaintiff's school records more credibly reflected her abilities and limitations than Dr. Rosin's opinion which may have been affected by Plaintiff's motivation to underperform in order to obtain social

---

[49]     Tr. 113.

[50]     Tr. 128.

[51]     Tr. 131.

[52]     Tr. 42.

17

security benefits.

As it is the role of the ALJ to resolve evidentiary conflicts, the court will not substitute its judgment for his when the decision is supported by substantial evidence and is founded in sound legal standards.  See Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).  The court concludes that the ALJ did not err in not crediting portions of Dr. Rosin's opinion that Plaintiff appeared to have poor judgment, poor abstraction ability and functioned at a fourth-grade academic level in determining Plaintiff's mental RFC because those limitations are not supported by the record.  As such, the ALJ was not bound by the VE's responses to hypothetical questions posed by Plaintiff's attorney that, assuming such limitations, Plaintiff could not be competitively employed.  See Owens v. Heckler, 770 F.2d 1276, 1282 (5th Cir. 1985)(ALJ is not bound by VE testimony based on evidentiary assumptions ultimately rejected).

The ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

### 3.  Retained ability to perform unskilled work

Here, Plaintiff argues that the ALJ's findings that she has a marked limitation in her ability to understand, remember and carry out detailed instructions and moderate limitations in other work-related abilities are inconsistent with his determination that Plaintiff can perform one hundred percent of all unskilled jobs.

Plaintiff argues that the ALJ's finding violates SSR 85-15 and must be reversed on that basis.

SSR 85-15 generally provides a framework by which solely non-exertional impairments are evaluated in the context of residual functional capacity. SSR 85-15, 1985 WL 65857.  The ruling requires that the ALJ first determine whether a claimant's non-exertional limitations affect her exertional capacity.  Here, Plaintiff does not claim that she has any exertional limitations and the ALJ found none.

The ruling then requires the ALJ to determine whether a person can make a vocational adjustment in light of her occupational base, age, education and past work experience.  SSR 85-15, 1985 WL 56857, at *3.  When considering a mental impairment, the ruling explains that the basic mental demands of competitive employment require an ability, on a sustained basis, to understand, carry out and remember simple instructions, to respond appropriately to supervision, co-workers and usual work situations and to deal with changes in a routine work setting.  SSR 85-15, 1985 WL 56857, at *4.  The ruling states:

> A substantial loss of the ability to meet any of these basic work-related activities would severely limit the potential occupational base.  This, in turn, would justify a finding of disability because even favorable age, education or work experience will not offset such a severely limited occupational base.

Id.

19

However, Plaintiff was found to retain those crucial abilities. In addition, her school records reflected that she had the ability to deal well with peers, had good attendance and was polite and respectful to teachers. The ALJ found that these abilities would transfer to the workplace and his decision that Plaintiff had these basic qualities for competitive employment is supported by substantial evidence.[53]

The ruling concludes "where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work." Id.

Contrary to Plaintiff's argument, SSR 85-15 does not support a finding of disability. The court concludes that the ALJ did not err when he found that Plaintiff, having the ability to meet the basic mental demands of competitive employment and having no exertional limitations, had the RFC for all unskilled jobs at all levels of exertion. Given that finding, it was Plaintiff's burden to prove that she was unable to perform such work. Muse, 925 F.2d at 789. This, Plaintiff failed to do.

The court is sympathetic to the difficulties faced by Plaintiff; however, the ALJ is given the task of weighing the evidence and deciding disputes. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243,

---

[53]     Tr. 34.

246 (5th Cir. 1991).  Because the court finds that the ALJ committed no legal error and more than a scintilla of evidence exists in support of the ALJ's decision, that decision cannot be overturned.

### IV. Conclusion

For all of the foregoing reasons, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this 6th day of January, 2009.

Nancy K. Johnson
United States Magistrate Judge